1 PAUL A. TURCKE (applicant *pro hac vice*)     DENNIS PORTER (Cal. Bar #67176)
   MOORE SMITH BUXTON & TURCKE     Attorney at Law
2 950 West Bannock Street, Suite 520     8120 36th Avenue
   Boise, Idaho 83702     Sacramento, CA 95824-2304
3 Telephone: (208) 331-1800     Telephone: (916) 381-8300
   Facsimile: (208) 331-1202     Facsimile: (916) 381-8726
4 pat@msbtlaw.com     dlporter2@yahoo.com

5

6

7           IN THE UNITED STATES DISTRICT COURT

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10 DEL NORTE COUNTY, CALIFORNIA; DEL    **CV 10   2047**
11 NORTE ROD AND GUN CLUB; LAKE EARL )
   GRANGE; NORTH COAST CLIFFHANGERS 4 )
12 WHEEL DRIVE CLUB; CALIFORNIA )
   ASSOCIATION OF 4 WHEEL DRIVE CLUBS; )   Case No.  CV 10-_____
13 BLUE RIBBON COALITION; )
                               )    COMPLAINT
14          Plaintiffs, )
                               )
15          v. )
                               )
16                                )
   UNITED STATES FOREST SERVICE; an agency of )
17 the United States Department of Agriculture; SIX )
   RIVERS NATIONAL FOREST; TYRONE )
18 KELLEY, Forest Supervisor, Six Rivers National )
   Forest; MARY KAY VANDIVER, District Ranger, )
19 Gasquet Ranger District/Smith River National )
   Recreation Area; )
20                                )
21          Defendants.

22                        **NATURE OF ACTION**

23       1.     This action seeks declaratory and injunctive relief requiring Defendants United

24 States Forest Service, Six Rivers National Forest, Tyrone Kelley and Mary Kay Vandiver (the

25

26

COMPLAINT – Page 1

ORIGINAL

"Forest Service") to acknowledge and adhere to controlling law while managing the Six Rivers National Forest.

2. Plaintiffs specifically challenge the Forest's recent and ongoing actions, under the guise of "road maintenance", which have utilized heavy equipment to intentionally conduct ground-disturbing removal of culverts, installation of berms, "water bars and rolling dips" and decommissioning of road surfaces. These activities have been performed without any notice to or opportunity for comment by the public, without consultation with associated agencies concerning water quality or other possible impacts, and without meaningful internal analysis of such possible impacts.

3. An example of the challenged conduct includes actions taken in late 2009 along Forest Road 17N92, which is in the Smith River watershed. A contractor acting under the control and supervision of the Forest performed ground-disturbing activities which coincided with seasonal precipitation events to cause erosion and deposition of sediment-laden runoff to the watershed. These activities occurred in the absence of legally-required analysis of potential environmental impacts connected to such actions.

4. Plaintiffs additionally challenge the formal process, or lack thereof, by which the Forest recently designated roads, trails and areas for motorized use through publication of a Motor Vehicle Use Map ("MVUM"). Contrary to applicable law and regulation, as well as established practice throughout the National Forest System, the MVUM was published without opportunity for public review, comment, administrative appeal, or other meaningful public involvement.

COMPLAINT – Page 2

5.     This suit arises under the National Forest Management Act, 16 U.S.C. § 1600 et seq. ("NFMA"); the National Environmental Policy Act, 42 U.S.C. § 4331, et seq. ("NEPA"); the Administrative Procedure Act, 5 U.S.C. § 551, et seq. (the "APA"), and any implementing regulations for these statutes.

### JURISDICTION AND VENUE

6.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States. The conduct complained of creates an actual, justiciable controversy and is made reviewable under the APA.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(e) because the Forest's office is located in Eureka, within the Northern District of California, a substantial number of the events or omissions giving rise to these claims occurred, or, a substantial part of the property that is the subject of these claims is situated, within the Northern District of California. Additionally, one or more plaintiffs reside in the Northern District of California.

### PARTIES

8.     Plaintiff Del Norte County (the "County") is a political subdivision of the State of California. The County is located at the north-westernmost corner of the State, bordered on the west by the Pacific Ocean and on the north by the State of Oregon. The County encompasses about 1,003 square miles with a human population of about 26,000. The County seat is Crescent City, which is located on Highway 101 approximately 20 miles south of the Oregon border, with a population of about 7,542. The Six Rivers National Forest is located within the borders of the County, and residents of the County have long relied upon the tangible and intangible resources of the Forest, both before and after its formal creation by Congress, for economic, real property,

COMPLAINT – Page 3

contractual, recreational/aesthetic and other interests. The County acts by and through its duly-convened Board of Supervisors, who have attempted, in accordance with applicable law and regulation, to work collaboratively and cooperatively with the Forest regarding matters addressed within and beyond this Complaint.

9. Plaintiff Del Norte Rod and Gun Club ("RG Club") is a California unincorporated nonprofit association comprised of approximately 110 members. RG Club members are connected not through their interest in any particular activity or sociopolitical attribute, but through their common interest in outdoor sporting activities in the Forest, specifically including Del Norte County, California and the Smith River corridor within the Forest. RG Club members have enjoyed, and hope for themselves and future generations to enjoy, a variety of recreational, aesthetic, and commercial activities within the Forest. These activities include sightseeing, hunting, fishing, camping, wildlife and plant viewing, photography, and travel associated with and necessary to such activities via motorized vehicles, horseback and on foot.

10. Plaintiff Lake Earl Grange ("LEG") is a California unincorporated nonprofit association with approximately 150 members. LEG members access the Forest using both motorized and non-motorized means of transportation in pursuit of various outdoor recreational activities including equestrian use, hunting, fishing, wood gathering driving for pleasure, camping, nature viewing and similar pursuits. LEG members have enjoyed in the past, and have concrete plans to enjoy in the future, such activities along or within areas accessible via the routes addressed herein.

11. Plaintiff North Coast Cliffhangers 4 Wheel Drive Club ("Cliffhangers") is a California unincorporated nonprofit association with approximately 25 members. Cliffhangers is

COMPLAINT – Page 4

a member club in good standing of the California Association of 4 Wheel Drive Clubs. Cliffhangers members access the Forest using both motorized and non-motorized means of transportation in pursuit of various outdoor recreational activities including equestrian use, hunting, fishing, wood gathering driving for pleasure, camping, nature viewing and similar pursuits. Cliffhangers members have enjoyed in the past, and have concrete plans to enjoy in the future, such activities along or within areas accessible via the routes addressed herein.

12.    Plaintiff California Association of 4 Wheel Drive Clubs ("Cal4") is a California mutual benefit corporation representing over 8,000 members and 160 clubs in the State of California. Cal4 members use motorized means to access and enjoy lands managed by the Forest Service throughout California. In particular, Cal4 members share a common interest in owning, maintaining, and operating customized 4-wheel drive vehicles such as Jeeps and Broncos on dirt roads and trails. Such vehicular access also facilitates Cal4 members' various outdoor activities, such as picnicking, camping, sightseeing, wildlife and nature study, hunting and fishing, and similar activities. Many Cal4 members, due to age, physical condition, or other factors, would be unable to enjoy meaningful participation in their chosen activities without vehicular access to lands managed by the Forest Service. As an organization, Cal4 is dedicated to the protection of the values and natural resources in the Six Rivers and other National Forests and regularly works with land managers to provide recreation opportunities, preserve natural resources, and promote cooperation between public land visitors.

13.    Plaintiff Blue Ribbon Coalition, Inc. ("BlueRibbon") is an Idaho nonprofit corporation representing over 10,000 individual members and 1,200 businesses and organizations with approximately 600,000 members nationwide. BlueRibbon members use motorized and

COMPLAINT – Page 5

nonmotorized means, including off-highway vehicles, horses, mountain bikes, and hiking, to access Forest Service and other public lands throughout the United States, including such lands in California. BlueRibbon has a long-standing interest in the protection of the values and natural resources addressed herein, and regularly works with land managers to provide recreation opportunities, preserve resources, and promote cooperation between public land visitors. BlueRibbon members have visited the Forest via the above-described means of access and intend to do so in the future.

14.     Defendant United States Forest Service is a federal agency within the United States Department of Agriculture.   The Forest Service is charged with administering and overseeing United States Forest System lands in accordance with applicable law.

15.     Defendant Six Rivers National Forest is a subunit of the United States Forest Service comprised of approximately 957,590 National Forest acres and 133,410 acres of other ownership in California. The Forest's main office is located in Eureka.

16.     Defendant Tyrone Kelley is the Forest Supervisor for the Six Rivers National Forest. As his title implies, he is the supervisor for the Forest and is the ultimate authority for the actions, procedures and decisions of the Forest and is charged with ensuring the Forest complies with applicable law. He is sued solely in his official capacity.

17.     Defendant Mary Kay Vandiver is the District Ranger of the Gasquet Ranger District, Smith River Recreation Area.   She retains ultimate authority and is charged with ensuring compliance with applicable law for actions taken within her Ranger District.  She is sued solely in her official capacity.

## LEGAL FRAMEWORK

COMPLAINT – Page 6

18.     The APA addresses and regulates the function of executive branch administrative agencies within our system of open government. Among such functions, the APA represents a waiver of sovereign immunity by the United States and outlines the circumstances in which "final agency action" may be subject to judicial review, as well as the standards of review to be applied in such challenges. Since many statutes and regulations do not provide for a private right of action, the APA provides the jurisdictional basis for judicial review of administrative decisions by federal land management agencies applying statutes like NEPA and NFMA to public lands like the Forest.

19.     NEPA represents "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1.     NEPA's protections of the "environment" refer to the "human environment" which "shall be interpreted comprehensively to include the natural and physical environment and the relationship of people with that environment." 40 C.F.R. § 1508.14. Among its numerous purposes, NEPA procedures are designed to foster informed agency decisionmaking based upon informed public participation.

20.     NFMA establishes the statutory framework for management of the National Forest System. In NFMA and other statutes, "Congress has consistently acknowledged that the Forest Service must balance competing demands in managing National Forest System lands. Indeed, since Congress' early regulation of the national forests, it has never been the case that "the national forests were…to be 'set aside for non-use.'" *The Lands Council v. McNair*, 537 F.3d 981, 990 (9th Cir. 2008) (en banc) (citations omitted).     Additional guidance, incorporated expressly within NFMA, is offered in the Multiple-Use Sustained Yield Act ("MUSYA"), which provides that the various surface resources be managed "so that they are utilized in the

COMPLAINT – Page 7

combination that will best meet the needs of the American people" and to "achieve[ ] and maintain[ ] in perpetuity [ ] a high-level annual or regular periodic output of the various renewable resources of the national forests without impairment of the productivity of the land." 16 U.S.C. § 531(a) (definition of "multiple use") and (b) (definition of "sustained yield"); 16 U.S.C. § 1604(g) (incorporating MUSYA provisions in NFMA).

21.     NFMA procedurally requires the Forest to prepare and revise a "forest plan." 16 U.S.C. § 1604. A forest plan lays out broad guidelines to advance numerous goals and objectives, including to "insure consideration of the economic and environmental aspects of various systems of renewable resource management, including the related systems of silviculture and protection of forest resource, to provide for outdoor recreation (including wilderness), range, timber, watershed, wildlife, and fish...." *Id.* at (g)(3)(A). These plans contain desired conditions, objectives and guidance for project and activity decisionmaking, but do not approve or execute projects and activities. 36 C.F.R. § 219.3 (2007). The guidance in the Forest Plan is subject to change through plan amendment in site-specific or project-level planning, or through revision of the Forest Plan itself. 36 C.F.R. § 219.12 (2007). Additional guidance and criteria are presented in activity-specific rules, such as the Travel Management Rule provides for motorized access to the Forest System.

22.     On November 9, 2005, the Forest Service published in the Federal Register a Final Rule entitled "Travel Management; Designated Routes and Areas for Motor Vehicle Use." 70 Fed.Reg. 68264-68291 (Nov. 9, 2005) (the "Travel Management Rule"). The Travel Management Rule was issued following publication of, and receipt of public comment upon, a proposed rule and was otherwise promulgated in accordance with notice-and-comment

COMPLAINT – Page 8

rulemaking procedures of the APA. As such, the Travel Management Rule carries force and effect of law and the procedures and provisions therein are binding upon the Forest Service.

23. The Travel Management Rule generally "requires designation of those roads, trails and areas that are open to motor vehicle use…and will prohibit the use of motor vehicles off the designated system, as well as use of motor vehicles on routes and in areas that is not consistent with the designations." 70 Fed.Reg. 68264 (Nov. 9, 2005).

24. The tangible outcome of the planning process required by the Travel Management Rule is publication of a Motor Vehicle Use Map ("MVUM") which is "[a] map reflecting designated roads, trails and areas on an administrative unit or a Ranger District of the National Forest System." *Id.* at 68288; 36 C.F.R. § 212.1 (2006).

25. The Travel Management Rule requires the agency to apply "general criteria" when designating roads, trails and areas for vehicle use, which include effects on natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses of National Forest System lands, the need for maintenance and administration of roads, trails and areas, and the availability of resources for maintenance and administration. 36 C.F.R. § 212.55(a) (2006). The Travel Management Rule further includes "specific criteria" which must be considered, "with the objective of minimizing" effects on specified resources including soils, watersheds, wildlife and associated habitats and conflicts between vehicle and other uses and within vehicle use types. *Id.* at (b).

26. The Travel Management Rule further describes the process by which roads, trails and areas will be designated, specifically noting that "[t]he public shall be allowed to participate in the designation" process, and that [a]dvance notice shall be given for public comment,

COMPLAINT – Page 9

consistent with agency procedures under [NEPA], on proposed designations and revisions." 36 C.F.R. § 212.52(a) (2006).

27.    The Travel Management Rule does identify circumstances when public involvement consistent with NEPA is not required, indicating "[p]ublic notice with no further public involvement is sufficient if a National Forest or Ranger District has made previous administrative decisions, under other authorities and including public involvement, which restrict motor vehicle use over the entire National Forest or Ranger District to designated routes and areas, and no change is proposed to these previous decisions and designations." *Id.*

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

28.    The Six Rivers National Forest lies in northern California and encompasses portions of four California counties (Del Norte, Humboldt, Trinity, Siskiyou) in a long narrow pattern of ownership stretching in a narrow 140-mile band from the Oregon border southward to Mendocino County.   The Forest includes grassy glades and extensive conifer stands, with elevation ranges from sea level to nearly 7,000 feet. About 1,500 miles of permanent streams are found on the Forest, supplying about 9% of California's total runoff, and the major waterways draining or passing through the Forest are the Smith, Klamath, Trinity, Mad, Van Duzen and Eel Rivers.

29.    The Forest has long included outstanding and diverse opportunities for both motorized and nonmotorized recreation.   The Six Rivers is best known for its valued timber, dispersed recreation, and outstanding anadromous fishing.   In particular, the Smith River represents the largest single undammed Wild and Scenic River system in the United States and provides habitat for Chinook and coho salmon, steelhead, and rainbow and cutthroat trout.   The

COMPLAINT – Page 10

largest steelhead on record in California (27 lbs. 4 oz.) was landed on the Smith, as was the state's second-largest (86 lbs.) recorded Chinook salmon. These fisheries exist in part due to the unique habitat offered by the Smith, including its water quality.

30.     The road and trail network has long been a foundation of human visitation and livelihood on the Forest. This network has included roughly 2,500 miles of roads and 250 miles of trails, serving varied needs over time created by or associated with 1930s Civilian Conservation Corps projects, historic and modern-day mining and logging, nationally-renowned redwood forests, other unique recreational destinations and features.

31.     The road and trail network has been addressed through various planning efforts by the Forest. For example, "recreation" is generally addressed in the 1995 Land and Resource Management Plan (or "Forest Plan"), which states:

> Developed recreation opportunities will be adequate to meet project demand. Approximately 50 percent of developed sites will be rehabilitated during the first decade to respond to changing user needs and accessibility requirements. Major facility construction will occur within the Smith River National Recreation Area according to the Smith River National Recreation Area Management Plan; minor site construction will occur elsewhere. Trails will be maintained on the average of every three years and expand to include management for equestrian and mountain bike use. About 16 miles of trail will be constructed or reconstructed during the first decade.  Staging areas with facilities to accommodate OHV use will be constructed during the first decade.

Record of Decision at ROD-4 & 5; 1995 Six Rivers LRMP.

32.     As is common throughout the National Forest System, "visitor use maps" were created and widely distributed to the public, generally depicting the roads and trails available for travel as well as seasonal or other restrictions on specific routes/areas.

COMPLAINT – Page 11

33. Notwithstanding the foregoing, a route/area status as "open", "closed" or "restricted" on the Forest's "visitor use maps" may or may not accurately reflect the outcome of a formal administrative decision.

34. Neither the Forest nor any entire Ranger District has ever formally designated roads, trails and areas for motorized (or other) access through a process involving advance notice and opportunity for public involvement and administrative appeal consistent with the NEPA.

35. Subsequent to promulgation of the Travel Management Rule the Forest evaluated how to generate an initial MVUM. The Forest did not conduct a formal planning process including public notice and involvement.

36. In September, 2009, the Forest published an MVUM.

37. The route/area designations on the September 2009 MVUM did not coincide with those on the preceding "forest visitor map." Nor did the September, 2009, MVUM designations coincide with those on any map distributed by the Forest or otherwise made available to forest visitors or the public.

38. According to media reports, the Forest intends to begin a collaborative process, as well as analysis through an Environmental Assessment under NEPA, that will consider modifications to the MVUM.

39. On information and belief, and in accordance with the Travel Management Rule, the September 2009 MVUM will reflect the formal status of routes and areas on the Forest. As a result, the MVUM will define and restrict public access to and within the Forest by motorized vehicle type. Those determined by agency or law enforcement officers to be in violation of the MVUM prescriptions will face criminal sanctions under applicable law and regulation.

COMPLAINT – Page 12

40.     Plaintiffs and their members reside near (or within) the Forest, and enjoy the Forest in their livelihood as well as their recreational and aesthetic pursuits. Life in the area offers challenges, which are largely outweighed by the natural beauty and relatively unspoiled character of lands within and surrounding the Forest, and the relaxed pace of living still meaningfully connected to the outstanding natural and physical environment.

41.     In mid-December 2009, members of Plaintiff organizations were visiting the Forest and noticed ground-disturbing activities underway, including what appeared to be removal of culverts; recontouring of road surfaces; grading; building or reconfiguration of berms; and related travel; all involving heavy equipment such as "caterpillar" tractors and large trucks.

42.     The aforementioned activities were observed in several locations on the Forest, specifically including along Forest Road 17N92. Forest Road 17N92 is not designated for motorized travel under the MVUM and was in late 2009 (and is presently) physically obstructed by a locked gate.

43.     On approximately December 22, 2009, Plaintiff members were in the vicinity of Forest Road 17N92, and observed numerous Forest Service vehicles at the locked gate and could hear what sounded like heavy equipment operating in the vicinity of Road 17N92 beyond the locked gate.

44.     Plaintiff members revisited Road 17N92 on subsequent occasions and observed ground-disturbing activities and modifications to the roadbed and surrounding terrain. Coincident with seasonal rainfall common to the area, rivulets and small tributaries to the adjacent streams previously protected through functioning culverts and erosion-control devices

COMPLAINT – Page 13

were depositing much greater than normal volume of chocolate-brown water to the adjacent waterways, which ultimately drain into the Smith River.

45.     Upon observing the ground-disturbing activities on Road 17N92, Plaintiff members contacted Forest and County officials.  Following these reports, Forest personnel appeared at public meeting before the Del Norte County Board of Supervisors on January 26, 2010.  A presentation regarding various topics was presented to the Board of Supervisors, and questions were raised by the Board and addressed by Forest personnel specifically addressing Road 17N92.  The proceedings of that meeting, including the entire Forest Service presentation, were recorded with video/audio recording equipment.  *See, e.g.*, proceedings of January 26, 2010, meeting beginning at approximately 1 hour, 33 minutes into recording, accessible via Del Norte County website at http://www.dnco.org/agendas/bos/publishedmeetings.htm.

46.     At approximately the same time Plaintiff members performed research through the Forest's website and other means and learned that the Forest had solicited bids for a project entitled "Smith River NRA Storm Proofing" in August, 2009.  A document entitled "Solicitation, Offer and Award" is dated August 24, 2009 for Requisition #302010, AAP #05NP100940996.  The document is 69 pages long, and is hereinafter referred to as "the Contract."

47.     The Contract states "[t]he intent for this contract is to secure services for removing culverts on the Smith River National Recreation Area of Six Rivers National Forest.  Work consists of excavation and embankment, disposal of existing culverts, and the installation of rolling dips and waterbars on approximately nine miles of roads."  Contract at p. 4; Section C-1.1 – Scope of Contract.  The Contract further estimates the quantity of various "items" required of the contractor, including "removal of culverts" (25 items); "drainage excavation, water bar"

COMPLAINT – Page 14

(28 items); "drainage excavation, rolling dip, Type 2" (4 items); and "roadway obliteration, method 2" (1 item). Contract at p. 3; Section B-1 Schedule of Items. The estimate of price range for the described services "is between $100,000 and $250,000." Contract at p. 1.

48.     The Forest did not perform analysis of the action(s) proposed by the Contract in accordance with NEPA.

49.     The Forest did not consult with the U.S. Fish and Wildlife Service in accordance with the Endangered Species Act, or with state or federal agencies in accordance with state or federal water quality statutes such as the Clean Water Act.

50.     The Forest did not notify the public of the Contract or associated actions. The public was not provided an opportunity to comment upon the Contract or associated actions. Nor was the public provided an opportunity to administratively appeal or otherwise challenge negotiation, letting or implementation of the Contract.

51.     On information and belief, the Contract has not been fully implemented.

## COUNT ONE: VIOLATION OF NFMA; Travel Management Rule (Adoption of MVUM)

52.     Plaintiffs hereby incorporate by reference each statement and allegation previously made.

53.     The MVUM was not adopted through a public planning process. Specifically, the Forest did not, prior to publishing the MVUM, comply with the requirements of the Travel Management Rule that "[a]dvance notice shall be given for public comment, consistent with agency procedures under [NEPA], on proposed designations and revisions." 36 C.F.R. § 212.52(a) (2006).

COMPLAINT – Page 15

54.     Neither the Forest nor any of its Ranger Districts has made previous administrative decisions, under other authorities and including public involvement, which restrict motor vehicle use over the entire National Forest or Ranger District to designated routes and areas, and no change is proposed to these previous decisions and designations. *See*, *id.*

55.     Defendants' actions described above, to specifically include adopting and publishing the MVUM, are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or otherwise in violation of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

56.     Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief. In particular, Defendants have conducted no public process, and have offered no opportunity for administrative participation, review, or "administrative remedies" to exhaust.

57.     Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associated with their use and enjoyment of the Forest as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

**COUNT TWO: VIOLATION OF NEPA**
**(Adoption of MVUM)**

58.     Plaintiffs hereby incorporate by reference each statement and allegation previously made.

COMPLAINT – Page 16

59.     NEPA generally requires that federal agencies disclose and consider alternatives to proposals for action that may significantly affect the human environment. NEPA and related procedures "must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken." 40 C.F.R. § 1500.1.

60.     The route- and area-specific designations in the MVUM presented at least the potential for significant effects to the human environment. Such effects might be associated with decision to not only designate a route/area as "open" or "closed" to motorized travel, but also whether to restrict such travel based upon site-specific resources, nature of use, seasonal factors, or similar conditions.

61.     The Forest did not conduct site-specific analysis under NEPA for the designations formalized in the MVUM. Given the lack of public involvement, Plaintiffs are uncertain what, if any, analysis preceded publication of the MVUM.

62.     Plaintiffs and other members of the public are constrained by the prescriptions of the MVUM. Thus, Plaintiffs, their members and citizens, are prohibited from visiting the Forest in any manner contrary to the MVUM, regardless of whether they have previously done so and regardless of whether such prior access was consistent with the applicable "forest visitor map" or other Forest direction.

63.     Plaintiffs, their members and citizens, face criminal sanctions if they are found to be in violation of the provisions of the MVUM.

64.     Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations;

COMPLAINT – Page 17

without observance of procedure required by law; or otherwise in violation of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

65.     Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief. In particular, Defendants have conducted no public process, and have offered no opportunity for administrative participation, review, or "administrative remedies" to exhaust.

66.     Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associated with their use and enjoyment of the Forest as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

## COUNT THREE: VIOLATION OF NEPA
### (Failure to Analyze)

67.     Plaintiffs hereby incorporate by reference each statement and allegation previously made.

68.     The actions described within and performed pursuant to the Contract presented at least the potential for significant effects to the human environment.

69.     In fact, due to poor timing, project design/specifications (or lack thereof), contractor performance or other factors, the actions performed under the Contract caused erosion and deposition of soil and sediment to tributaries of the Smith River.

70.     The Forest did not conduct site-specific analysis under NEPA for the actions outlined in and carried out under the Contract. The public was not provided an opportunity in

COMPLAINT – Page 18

accordance with NEPA or otherwise to review or comment upon the actions outlined in the Contract.

71. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or otherwise in violation of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

72. Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief. In particular. Defendants have conducted no public process, and have offered no opportunity for administrative participation, review, or "administrative remedies" to exhaust.

73. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associated with their use and enjoyment of the Forest as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

## COUNT FOUR: VIOLATION OF NEPA
### (Taking Action Involving Potential Significant Effects)

74. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

75. The actions taken under the Contract were performed within the direction and control of the Forest.

COMPLAINT – Page 19

76.     The actions taken under the Contract not only presented a potential for significant effects to the human environment, but did in fact ultimately have such effects.  Substantial ground-disturbance occurred which altered the slope and other aspects of the affected road prism and surrounding area.    The location, timing and nature of culvert removal and associated activities caused significant amounts of erosion, soil loss and/or sediment loading of tributaries in the North Fork Smith River watershed.

77.     These actions and resultant impacts represent violations of NEPA and other applicable law.

78.     Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or otherwise in violation of the APA, 5 U.S.C. § 706 (2), and should therefore be declared unlawful and set aside by this Court.

79.     Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.  In particular, Defendants have conducted no public process, and have offered no opportunity for administrative participation, review, or "administrative remedies" to exhaust.

80.     Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associated with their use and enjoyment of the Forest as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

COMPLAINT – Page 20

## COUNT FIVE: VIOLATION OF NFMA
### (Violation of Forest Plan)

81.     Plaintiffs hereby incorporate by reference each statement and allegation previously made.

82.     A land and resource management plan, or "forest plan" must be designed for each unit of the National Forest System and must "use a systematic interdisciplinary approach to achieve integrated consideration of physical, biological, economic, and other sciences..." in analyzing and allocating specific uses of the applicable forest. 16 U.S.C. § 1604(a).

83.     Following adoption of a Forest Plan, subsequent agency action, including project-level or other site-specific action, "must comply with NFMA and be consistent with the governing forest plan." *McNair*, 537 F.3d at 989.

84.     Neither the MVUM nor the Contract are consistent with the Six Rivers Forest Plan.  In fact, the Forest has taken actions, through both the MVUM and the Contract, that are not only not consistent with, but directly contradictory to, the Forest Plan.

85.     Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; short of statutory right; or otherwise in violation of the APA, 5 U.S.C. § 706 (2), and should therefore be declared unlawful and set aside by this Court.

86.     Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.  In particular, Defendants

COMPLAINT – Page 21

have conducted no public process, and have offered no opportunity for administrative participation, review, or "administrative remedies" to exhaust.

87.     Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from and associated with their use and enjoyment of the Forest as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

## REQUEST FOR RELIEF

Wherefore, having alleged the above-described violations of law, Plaintiffs respectfully request judgment in their favor on each and every claim alleged herein, and request that the Court rule, adjudge, and grant relief as follows:

1.     Declare unlawful the above-described actions taken by the Forest through or in conjunction with the Contract and/or MVUM;

2.     Remand the matters addressed in the Contract and similar matters in other portions of the Forest for further analysis and action in accordance with applicable law;

3.     Issue appropriate preliminary and/or permanent injunctive relief as may be requested by Plaintiffs or determined through appropriate proceedings;

4.     Award the Plaintiffs their reasonable fees, costs, and expenses of litigation as allowed by the Equal Access to Justice Act, 28 U.S.C. § 241 *et seq.* and other applicable law or rule of court; and

5.     Grant such further and additional relief as the Court deems just and proper.

COMPLAINT – Page 22

Respectfully submitted this 5th day of May April, 2010.

DENNIS L. PORTER, ATTORNEY AT LAW

___s/ Dennis L. Porter_____
Dennis L. Porter

Of Attorneys for Plaintiffs

COMPLAINT – Page 23