1   Julia A. Olson (CA Bar # 192642)
2   Wild Earth Advocates
    2985 Adams Street
3   Eugene, Oregon  97405
    Tel: 541-344-7066
4   Fax: 541-344-7061
5   jaoearth@aol.com

6   Susan Jane Brown, Applicant *Pro Hac Vice*
    Peter M.K. Frost, Applicant *Pro Hac Vice*
7   Western Environmental Law Center
8   4107 N.E. Couch Street
    Portland, Oregon  97232
9   Tel: 503-914-1323
    Fax:  541-485-2475
10  brown@westernlaw.org

11
    Attorneys for Applicants to Intervene/Defendants
12

13          **IN THE UNITED STATES DISTRICT COURT**
14          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15
16  DEL NORTE COUNTY, CALIFORNIA; DEL          Case No. CV 10-2047-NJV
    NORTE ROD AND GUN CLUB; LAKE EARL
17  GRANGE; NORTH COAST CLIFFHANGERS 4
    WHEEL DRIVE CLUB; CALIFORNIA
18  ASSOCIATION OF 4 WHEEL DRIVE CLUBS;        **UNOPPOSED MOTION TO**
    and BLUE RIBBON COALITION;                 **INTERVENE PURSUANT TO**
19                                             **FEDERAL RULE OF CIVIL**
                                               **PROCEDURE 24(a) AND 24(b)**
20          Plaintiffs,

21                  vs.

22
    UNITED STATES FOREST SERVICE; SIX
23  RIVERS NATIONAL FOREST; TYRONE
    KELLY; MARY KAY VANDIVER;
24
25          Defendants, and

26  KLAMATH-SISKIYOU WILDLANDS
    CENTER; and WILDLANDS CPR,
27
            Applicants-in-Intervention/Defendants.
28

PAGE 1 – UNOPPOSED MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 24(A) AND 24(B), Case No. CV 10-2047-NJV

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO INTERVENE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a) AND 24(b)

Pursuant to Federal Rule of Civil Procedure 24(a), the Klamath-Siskiyou Wildlands Center ("KS Wild") and Wildlands CPR hereby file this motion to intervene as a matter of right as a defendant in this action challenging the United States Forest Service's, et al. ("Defendants'") compliance with the National Forest Management Act, 16 U.S.C. § 1600 et seq. ("NFMA"); the National Environmental Policy Act, 16 U.S.C. § 4331, et seq. ("NEPA"); the Administrative Procedure Act, 5 U.S.C. § 551, et seq. ("APA"), and implementing regulations associated with these statutes.  In the alternative, the applicants-in-intervention move for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).  Applicants seek to intervene in both the merits and remedy phases of the case, as well as in any settlement.  This motion shall be heard before Hon. Nandor J. Vadas, on Tuesday, July 27, 2010, at 1 p.m., in courtroom 205A, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102.

Applicants to intervene have conferred by phone messages with counsel for Plaintiffs related to this motion.  Counsel for Plaintiffs do not oppose this motion.  Independently, the questions to be decided by this motion are as follows:

1.      Should KS Wild and Wildlands CPR be permitted to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a), having established that: (1) the motion is timely; (2) the applicants claim an interest relating to the property or transaction that is the subject of the action; (3) the applicants are situated such that disposing of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interests are not adequately represented by the existing parties?

2.      In the alternative, should KS Wild and Wildlands CPR be permitted to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b), having established that: (1) the motion is timely; (2) a statute of the United States confers upon the applicants a conditional right to intervene; and (3) the applicants have a claim or defense that shares with the main action a common question of law or fact?

MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION.

KS Wild and Wildlands CPR ("Applicants") satisfy all four requirements of Rule 24(a) and are therefore entitled to intervene in this action as a matter of right.  First, this motion to intervene is timely because no substantial activity has occurred in the case beyond the filing of the complaint, and no answer has yet been filed.  Second, the Applicants and their membership have a vested interest in the protection of the land/property that is the subject matter of this action.  Third, a decision granting the plaintiff's request for relief would, as a practical matter, impair the ability of the Applicants to protect their interests in the land/property.  Finally, the existing parties do not adequately represent the Applicant's interests because the United States Forest Service (hereinafter "USFS") often positions itself in a manner that significantly diverges from the Applicants' interests.  Moreover, the USFS does not maintain a devout fidelity to the Applicants' interests in a manner that would render their representation adequate.

## II.     FACTUAL AND LEGAL BACKGROUND

In September 2009, the Six Rivers National Forest ("Six Rivers"), an entity of the USFS, published a Motor Vehicle Use Map ("MVUM"), designating the roads available for motor vehicle use within the Smith River National Recreation Area ("NRA").  Once roads and trails are designated on an MVUM, it is prohibited to possess or operate a vehicle on National Forest System lands other than in compliance with those designations.  36 C.F.R. § 261.13.  The MVUM was promulgated pursuant to USFS Final Rule entitled "Travel Management: Designated Routes and Areas for Motor Vehicle Use," 70 Fed. Reg. 68,264-68,291 (Nov. 9, 2005) (the "Travel Management Rule").  In brief, the Travel Management Rule was developed to provide access for both "motorized and nonmotorized users in a manner that is environmentally sustainable over the long term."  *Id*. at 68,266.  To accomplish its stated goals, the Travel Management Rule establishes that in making a travel management decision, the Forest Service should consider multiple environmental and social factors, including natural and cultural resources, recreational opportunities, access needs, and conflicts among uses of National Forest System lands.  36 C.F.R. § 212.55(A).

The Travel Management Rule is the Forest Service's response to the marked increase in the "magnitude and intensity of motor vehicle use" on federal lands over the past 20 years. 70 Fed. Reg. at 68,264-68,265. Increased road usage does, however, come at a price. A number of unintended, environmentally-degrading side effects have resulted from the increased usage. Soil stability, water quality, and wildlife habitat are all negatively affected. *Id.* Moreover, as motor vehicle use increases, some National Forest visitors "report that their ability to enjoy quiet recreational experiences is affected by visitors using motor vehicles." *Id.* The American people revere National Forests for the values they provide: "opportunities for healthy recreation and exercise, natural scenic beauty, important natural resources, protection of rare species, wilderness, a connection with their history, and opportunities for unparalleled outdoor adventure." *Id.*

The Six Rivers lies east of Redwood State and National Parks in northwestern California, and stretches southward from the Oregon border for 400 miles. It encompasses 957,590 National Forest acres, including the NRA and the Siskiyou Wilderness Area. Elevations across the Forest range from approximately sea-level to nearly 7,000 feet. As a result, the Six Rivers supports a diversity of landscapes and biologically productive and unique ecosystems. These ecosystems provide habitat for eight federally classified threatened and endangered species, as well as a significant number of ecologically sensitive species. Many of these species, including chinook and coho salmon, are primarily dependent upon the proliferation of intact, pristine forest areas for their survival. Additionally, the Six Rivers contains more than 1,260 known historical or archeological sites.

Making up part of the Six Rivers, the federally designated NRA consists of 307,973 acres of the northernmost section of the forest, and offers a multitude of recreational activities and ecologically important areas. Congress created the NRA in 1990 to protect the Smith River watershed's special scenic value, rich ecological diversity, abundant wildlife, exceptional water quality, and renowned anadromous fisheries. 16 U.S.C. § 460bbb. The USFS has been designated the guardian and manager of the NRA, with direction to sustain the recreational and natural resource integrity of the area. The pristine, clear waters of the Smith River and its

PAGE 4 – UNOPPOSED MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24(A) AND 24(B), Case No. CV 10-2047-NJV

tributaries offer patrons world-class fishing for steelhead, trout, and salmon, as well as other fish species. Along with the area's excellent fishing, opportunities for other outdoor activities such as kayaking and backpacking are prevalent in the area.

## III.   APPLICANTS IN INTERVENTION.

**Applicant Klamath-Siskiyou Wildlands Center (KS Wild)** is a non-profit environmental organization registered in the State of Oregon. KS Wild advocates on behalf of the recreational, conservation, and biological vitality and interests of the Klamath-Siskiyou region of southwestern Oregon and northwestern California, including the Six Rivers Forest and the Smith River NRA. Members and staff of KS Wild regularly visit the NRA to utilize and appreciate the unique cultural, biological, and ecological features of the area. As such, KS Wild and its members have a vested interest in the travel management and MVUM of the NRA. The inherent, unquantifiable value of the Inventoried Roadless Areas ("IRA") within the NRA are of the utmost importance to KS Wild. For years, KS Wild has advocated for the permanent protection of the IRA's unique biological, hydrological and recreational values.

**Applicant Wildlands CPR** is a non-profit environmental organization that works with citizens, grassroots groups, tribes, and land managers to protect and revive natural areas. Specifically, Wildlands CPR seeks to revive and protect degraded wildlands by promoting watershed restoration. Wildlands CPR primarily advocates for watershed restoration through road reclamation, which restores clean water, reconnects fragmented wildlife habitat, and ensures access to healthy habitat and pristine wilderness. Its membership includes, but is not limited to, hunters, hikers, small business owners, fishermen, and teachers.

## IV.   THE APPLICANTS SHOULD BE PERMITTED TO INTERVENE

### A.   The Applicants Are Entitled to Intervene as a Matter of Right.

Federal Rule of Civil Procedure 24(a)(2) provides that intervention of right is proper where: (1) the motion is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant is situated such that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by existing

parties. FED. R. CIV. P. 24(a)(2). In determining whether intervention is appropriate, the Court is guided primarily by "practical and equitable" considerations. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

The Ninth Circuit further delineates the requirements into four distinct elements: (1) the application must be timely; (2) the applicant must have a "significantly protectable" interest in the property or transaction that is the subject of the litigation; (3) the applicant must be situated such that the disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the parties before the court. *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) ("LULAC") (citing *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)). As a general proposition, the Ninth Circuit interprets Rule 24 liberally in favor of permitting intervention. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

Applicants satisfy the Rule 24(a) test and qualify for intervention as of right in the case.

### 1. The Motion to Intervene is Timely.

The Court considers three factors when determining whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *LULAC*, 131 F.3d at 1302 (quoting *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1990)). The Applicants' motion to intervene is timely. It was filed shortly after the original complaint (about 30 days), and during the initial stages of the proceeding. No Answer has yet been filed by Defendants. The Applicants have not been tardy in seeking intervention, and their prompt Motion to Intervene will not prejudice any of the current parties.

### 2. The Applicants have a Significantly Protectable Interest in the Subject of the Litigation.

The second prong of the intervention test is a practical, threshold inquiry, where no specific legal or equitable interest need be established. *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1493 (9th Cir. 1995). Under Ninth Circuit case law, in order to demonstrate a significantly protectable interest, an applicant must establish that: (1) the

interest is protected under law, and (2) there is a relationship between the applicant's legally protected interest and the plaintiff's claims. *Donnelly*, 159 F.3d at 409 (citing *Northwest Forest Resource Council*, 82 F.3d at 837). Moreover, an applicant demonstrates a significantly protectable interest when the "injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [the applicant's] legally protectable interests." *Forest Conservation Council*, 66 F.3d at 1494.

The National Forest Management Act ("NFMA") establishes that the National Forest System is a unified system of lands that shall be "dedicated to the long-term benefit for present and future generations." 16 U.S.C. § 1609(a). The Smith River NRA, a management unit of the National Forest System, is subject to the governing use requirements promulgated under NFMA. As established in the foregoing paragraphs, the applicants are users and protectors of National Forest lands, including, but not limited to, both the Six Rivers and the National Recreation Area. As a result of their usage of the NRA specifically, and a general commitment to wildland protection, the applicants, as members and representatives of the "public," have a demonstrated interest that is protected by law.

Moreover, because the MVUM designates the roads available for vehicle use (and by default, indicates where motor vehicle use is not allowed), the applicants have an interest in the promulgation of the MVUM as recreational users of the NRA. The MVUM is a direct result of the Travel Management Rule, which seeks to ensure continued, sustainable access to both motorized and nonmotorized users of forest land. The Travel Management Rule's broad goals inherently vest an interest in not only users of motorized vehicles, but also those individuals that seek to enjoy the public lands by non-motorized means and to protect the resources of the forest system.

Applicant Wildlands CPR advocates nationwide and in the Six Rivers National Forest for restoration of watersheds through stabilization or, where appropriate, removal of environmentally harmful motorized infrastructure. Stabilization methods could include removal of culverts, re-contouring of old road beds, installation of rolling dips or water bars or a variety of other methods regularly employed by land management entities to properly control the flow of

water and prevent catastrophic mass wasting events that include full road and/or culvert failure. Wildlands CPR supports these activities through participation in the NEPA and other public processes, and through supplying general information on the benefits of these road stabilization and restoration activities to the agency and public.  Through their advocacy work and restoration goals, Wildlands CPR has a direct interest in the restoration of previously roaded areas to a more natural state.

Alternatively, the injunctive relief sought by the Plaintiffs will have direct, immediate, and harmful effects upon the applicant's protectable interests.  *Forest Conservation Council*, 66 F.3d at 1494.  In *Forest Conservation Council*, the Court held that the proposed interveners, having established tangible, concrete rights protected by various federal and state laws, demonstrated the injunction sought was a threat to their legally cognizable interests.  *Id.* at 1495-1496.  As in *Forest Conservation Council*, Applicants' interests may be threatened by any injunctive relief granted by the court.  In the event that the court determines that injunctive relief is appropriate, thus either expanding the road system depicted on the MVUM or rescinding the MVUM, Applicants' interest in preserving quiet recreational opportunities and ecological integrity would be impaired.   As users of the NRA, the Applicants have a vested interest in preserving the unique ecological, geographical, and recreational characteristics of the area.  Due to the fact that the vast majority of recreational opportunities existing within the NRA stem from the area's geographic and ecological features, a threat to such characteristics is likewise an intrusion upon the Applicants interests.

3.   Applicant's Interest Will be Impaired if Not Represented in the Litigation.

Rule 24(a)'s "impairment" requirement concerns whether, as a practical matter, a denial of intervention would impede or impair a prospective intervener's ability to protect its interests in the subject of the action.  The Rule 24(a) Advisory Committee Notes indicate that "if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 Advisory Committee's Note to 1966 Amendments.

The Court has found sufficient impairment to sustain intervention for conservation groups in suits such as this.  In *Idaho Farm Bureau Federation v. Babbit*, the court held that a disposition of the action resulting in the delisting of the Bruneau Hot Springs Snail "would impair [intervener's] ability to protect their interest in the Spring Snail and its habitat." *Idaho Farm Bureau Federation v. Babbit,* 58 F.3d 1392, 1397 (9th Cir. 1995).  Like *Idaho Farm Bureau Federation*, the relief requested by Plaintiffs would adversely affect the Applicant's interests.  Plaintiffs seek a number of relief options, which may nullify the September 2009 MVUM.  As outlined above, as recreational users and ecological advocates of the NRA, the Applicants have a distinct interest in the survival of the MVUM as originally published and in the preservation of the Six Rivers forest.

> 4.   The Existing Parties Do Not Adequately Represent the Interests of the Applicants.

The Supreme Court has held that the applicant's burden in showing inadequate representation is minimal.  *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n.10 (1972) (internal citation omitted).  The requirement of Rule 24(a) "is satisfied if the applicant shows that the representation of his interest 'may be' inadequate." *Id.*  In the Ninth Circuit, a court shall consider: (1) whether the interest of the current party is such that it will make all of the applicant's potential arguments; (2) whether the present party is able and willing to make such arguments; and (3) whether an applicant would propose any necessary elements to the litigation that the existing parties would ignore.  *People of California v. Tahoe Regional Planning Agency,* 792 F.2d 775, 779 (9th Cir. 1986).

The Applicant's litigation position differs from the Forest Service and it is extremely unlikely that the federal agency will prove able and willing to raise the Applicant's arguments.  Though the USFS and the Applicants may share a substantially similar purpose for defending this lawsuit (i.e., defense of the MVUM), in *Southwest Center for Biological Diversity v. Berg*, the Court held that two parties sharing the same "ultimate objective" may still serve specific divergent interests sufficient to permit intervention.  *Southwest Center for Biological Diversity,* 268 F.3d at 823 (Intervenors, though sharing the same "ultimate objective" as an existing party, had sufficiently specific interests that would not be addressed by the existing party).

Though the Applicants and the USFS likely share an ultimate interest in upholding the September 2009 MVUM, much like the intervenors in *Southwest Center for Biological Diversity*, the Applicants serve specific interests that extend beyond the USFS's commitment to the protection of forest lands for sustained multiple use. In implementing the multiple use mandate found in NFMA, the Forest Service is required to perform a balancing of interests. This required balancing puts the agency in a position that inhibits its ability to adopt alternative management frameworks, including implementing an MVUM that limits off-road motor vehicle use. Applicants, however, are not required to balance competing uses, and can (and do) freely advocate for conscribed ORV use. Sexton Declaration, ¶¶ 4 – 6, 8 – 24. Given this situation, it is very likely that the measured, multiple-use approach taken by the USFS will not lend itself to the production of each and every argument potentially raised by the Applicants.

Moreover, the prospect of settlement raises concerns that the Applicants' interests are adequately represented. As discussed above, the USFS is required to perform a balancing of interests when making a final determination. In the event that the USFS decides to pursue a settlement, the terms of such action likely will not appropriately incorporate the Applicant's specific and unique interests. Because the Applicants are not bound by a statutory balancing mandate, they can promote with unique vigor the consideration of arguments or interests not readily ascertainable by the USFS.

**B. In the Alternative, Applicants Should be Allowed to Permissively Intervene.**

Rule 24(b) outlines the basic requirements for permissive intervention: "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. FED. R. CIV. P. R. 24(b). When "exercising its discretion," the court is to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*; *Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1111 (9th Cir. 2002).

The Applicants satisfy the standard of Rule 24(b). First, as noted in Section IV(A)(1), Applicants' Motion for Intervention is timely. Second, Applicants' claims and the main action

have questions of law or fact in common.  Applicants seek to uphold the MVUM as originally published in September of 2009, and therefore will address questions of law and fact in common with those raised in the complaint.

Finally, no existing party would be prejudiced by permissive intervention at this early stage of litigation.  Applicants agree to be bound by all briefing and scheduling orders imposed by the court.

## V.    CONCLUSION.

For the foregoing reasons, the court should find the Applicants have a right to intervene under Federal Rule of Civil Procedure 24(a).  In the alternative, the Court should permit the Applicants to intervene permissively pursuant to Rule 24(b).

Dated:  June 15, 2010.                    Respectfully submitted,


/s/  Julia A. Olson
Julia A. Olson (CA Bar # 192642)
Wild Earth Advocates
2985 Adams Street
Eugene, Oregon 97405
Tel: 541-344-7066;
Fax: 541-344-7061
jaoearth@aol.com